# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:15-CR-00028-11 |
| v. | (Judge Brann) |
| PERMAESHWAR SINGH, | |
| Defendant. | |

## MEMORANDUM OPINION

### APRIL 10, 2020

### I.   BACKGROUND

In 2016, Permaeshwar Singh pled guilty, pursuant to a written plea agreement, to conspiracy to distribute at least 700, but less than 1,000, grams of heroin, in violation of 21 U.S.C. § 846.[1]  A presentence report ("PSR") was prepared that determined, in relevant part, that Singh qualified as a career offender under U.S. Sentencing Guidelines Manual § 4B1.1 (2016).[2]  The PSR made this determination based upon two predicate convictions: Singh's 2004 New York state court convictions for (1) attempted assault—intent to cause physical injury with a weapon or instrument, and (2) criminal possession of a controlled substance with intent to distribute, in violation of N.Y. Penal Law § 220.06(1) ("criminal possession").[3]  This

---

[1]  Docs. 269, 485.

[2]  Doc. 467 at 9.

[3]  *Id.* at 9, 11.

designation increased Singh's total offense level from 25 to 31, his criminal history category from V to VI, and the Sentencing Guidelines range from 100 to 125 months' imprisonment to 188 to 235 months' imprisonment.[4]

Singh objected to the career offender enhancement, arguing that he was sentenced for both state court convictions on the same day, and therefore the offenses should not be counted as separate predicate convictions.[5] At the sentencing hearing, this Court overruled Singh's objections and concluded that, because the offenses were separate by an intervening arrest, they were both properly counted as predicate offenses that may support a career offender enhancement.[6] The Court thus calculated a Sentencing Guidelines range of 188 to 235 months' imprisonment.[7] After reviewing the relevant 18 U.S.C. § 3553(a) factors, this Court imposed a below-Guidelines sentence of 180 months' imprisonment.[8]

Singh filed a timely appeal and argued—for the first time—that he did not qualify as a career offender because his New York state conviction for criminal possession did not qualify as a "controlled substance offense" as defined by USSG § 4A1.2(b).[9] The United States Court of Appeals for the Third Circuit determined

---

[4]   *Id.* at 9, 12; USSG Ch. 5, Pt. A.
[5]   Doc. 466 at 2-3.
[6]   Doc. 486 at 10-12.
[7]   *Id.* at 12.
[8]   *Id.* at 24-27.
[9]   *See* Doc. 548-2 at 2-3.

that criminal possession is a divisible offense, applied the modified categorical approach to determine that Singh was convicted of violating N.Y. Penal Law § 220.06(1), and concluded that criminal possession is broader than its generic federal counterpart because it prohibits possession with intent to distribute chorionic gonadotropin, while federal law does not.[10] Nevertheless, our Court of Appeals noted that, to demonstrate that § 220.06(1) "cannot serve as a predicate offense under § 4B1.1, Singh must also show a realistic probability that New York would prosecute someone under § 220.06(1) for possession with intent to sell chorionic gonadotropin."[11] The Third Circuit remanded the matter to this Court to determine in the first instance whether such a prosecution is realistically probable.[12]

Upon remand, this Court directed the parties to submit supplemental briefs, together with any pertinent evidentiary materials, addressing whether there is a realistic probability that the State of New York would prosecute individuals under N.Y. Penal Law § 220.06(1) for possession of chorionic gonadotropin.[13] Singh contends that such a probability exists for two reasons.[14] First, he argues that, because the language of the state statute is broader than its federal counterpart, the

---

[10] *Id.* at 4-7.

[11] *Id.* at 7.

[12] *Id.* at 7-8.

[13] Doc. 552.

[14] Doc. 562.

3

reasonable probability inquiry is been met as a matter of law.[15]  Second, Singh asserts that the inquiry is satisfied because New York has prosecuted three individuals for the sale of chorionic gonadotropin under a different, but related, statute, and because the New York state legislature has made a deliberate decision to criminalize possession with intent to distribute chorionic gonadotropin.[16]

The matter is now ripe for resolution and, for the following reasons, the Court concludes that there is a realistic probability that New York would prosecute individuals for possession of chorionic gonadotropin under N.Y. Penal Law § 220.06(1), and will therefore resentence Singh absent the career offender designation.

## II.  DISCUSSION

Under the Sentencing Guidelines, an individual "is a career offender if . . . the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."[17]  A "controlled substance offense" is an offense that (1) is punishable by more than one year of imprisonment and (2) "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit

---

[15] *Id.* at 6-10.

[16] *Id.* at 10-19.

[17] USSG § 4B1.1(a).

4

substance) with intent to manufacture, import, export, distribute, or dispense."[18] "A state conviction cannot qualify as a 'controlled substance offense' if its elements are broader than those listed in § 4B1.2(b)."[19]

However, even where the elements of the state crime are broader than the generic federal crime, "[t]he categorical approach 'requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'"[20] Although defendants generally "establish such a probability by showing that the state statute was so applied in his or her own case or by pointing to other cases in which the state courts applied the statute in a non-generic fashion,"[21] the Third Circuit has dispensed with such a showing in certain circumstances.

As the Third Circuit has explained:

> In *Singh v. Attorney General*,[22] we highlighted that the relevant elements of the statutes at issue in *Moncrieffe*[23] and *Duenas-Alvarez*[24] were identical. But where "the elements of the crime of conviction are not the same as the elements of the generic federal offense," we explained, we believe "the 'realistic probability' language" (or, the "'realistic probability' inquiry") of *Moncrieffe* is

---

[18] *Id.* § 4B1.2(b).

[19] *United States v. Glass*, 904 F.3d 319, 321 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 840 (2019).

[20] *United States v. Daniels*, 915 F.3d 148, 151 (3d Cir. 2019) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)), *cert. denied*, No. 19-28, 2020 WL 981816 (U.S. Mar. 2, 2020).

[21] *Id.*

[22] 839 F.3d 273 (3d Cir 2016).

[23] *Moncrieffe v. Holder*, 569 U.S. 184 (2013).

[24] *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007).

5

"simply not meant to apply."[25]

"*Singh v. Attorney General*, therefore, . . . prevents placing an undue burden on [defendants] of identifying cases of actual prosecution where the statute expressly authorizes the state government to enforce broader conduct."[26] Thus, where a state statute "plainly encompasses more conduct than its federal counterpart, [a defendant] does not need to identify cases in which [state authorities] actually prosecuted overbroad conduct."[27] Rather, "the realistic probability inquiry" is satisfied as a matter of law and "[t]he statute of conviction does not constitute" a predicate offense under USSG § 4B1.1.[28]

Here, as explained by the Third Circuit, "under the first provision of [N.Y. Penal Law § 220.06], . . . a person is guilty of a class D felony of criminal possession of a controlled substance in the fifth degree when he or she knowingly and unlawfully pos[s]esses 'a controlled substance with intent to sell it.'"[29] Moreover, "New York law at the time of Singh's conviction had a broader definition of a controlled substance than its federal counterpart. New York law defined a 'controlled substance' . . . [to] include[] chorionic gonadotropin as a prohibited

---

[25] *Salmoran v. Attorney Gen. U.S.*, 909 F.3d 73, 81 (3d Cir. 2018) (footnote and citations omitted).

[26] *Id.* at 82.

[27] *Id.*

[28] *Id.*

[29] Doc. 548-2 at 7 (quoting N.Y. Penal Law § 220.06).

6

drug," which is not included as a prohibited drug under federal law.[30]

This renders the determination of whether there is a realistic probability that New York would prosecute an individual under N.Y. Penal Law § 220.06(1) for possession of chorionic gonadotropin a straightforward task. As in *Salmoran*, the state defines a term in its criminal statute by reference to another section of the state code.[31] As in *Salmoran*, the referenced section of the state code explicitly proscribes conduct that is not prohibited under the corresponding federal law.[32] Thus, the "controlled substance" element of N.Y. Penal Law § 220.06(1) is broader than the "controlled substance" element of the corresponding federal law.[33] *Salmoran* therefore controls:[34] because N.Y. Penal Law § 220.06(1) explicitly permits a

---

[30] *Id.* (quoting N.Y. Penal Law § 220.00(5); N.Y. Pub. Health Law § 3306).

[31] *Salmoran*, 909 F.3d at 78; N.Y. Penal Law § 220.00(5).

[32] *Salmoran*, 909 F.3d at 78; N.Y. Pub. Health Law § 3306; 21 U.S.C. § 812.

[33] *See Singh*, 839 F.3d at 285-86 (holding that broader definition of prohibited controlled substances rendered the "controlled substance" element of the Pennsylvania statute broader than its generic federal counterpart); *United States v. Townsend*, 897 F.3d 66, 74 (2d Cir. 2018) (holding that "the 'controlled substance' element" of New York law is broader than corresponding federal law due to its inclusion of chorionic gonadotropin).

[34] There is some confusion over the purpose of this remand, and the Government asserts that "although it has held that the realistic probability analysis is not necessary in every case, . . . the Third Circuit has determined that it is required here." (Doc. 561 at 10). This confusion may stem from the language employed by the Third Circuit in *Singh*, where it stated that if "the elements of the crime of conviction are not the same as the elements of the generic federal offense," the reasonable probability analysis "is simply not meant to apply." 839 F.3d at 286 n.10. However, the Third Circuit in *Salmoran* explained "it is a matter of semantics as to whether we state that the realistic probability inquiry is not meant to apply, or the realistic probability requirement is necessarily satisfied because legal imagination is not needed." 909 F.3d at 82 (citation and internal quotation marks omitted). Accordingly, the remand for this Court to apply the reasonable probability analysis does not foreclose the application of *Salmoran*. To the contrary, *Salmoran* and *Singh*, as binding precedent, must be applied to the reasonable probability analysis, rendering this Court's task on remand a fairly mechanical application of that case law to the facts of this case.

prosecution for possession of chorionic gonadotropin, "[t]he statute of conviction does not constitute" a predicate offense sufficient to support the career offender enhancement.[35]

## III. CONCLUSION

For the foregoing reasons, the Court concludes that there is a realistic probability that the State of New York would prosecute individuals under N.Y. Penal Law § 220.06(1) for possession of chorionic gonadotropin.[36] Accordingly, the Court will resentence Singh, absent the career offender designation.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[35] *Salmoran*, 909 F.3d at 82.

[36] Because the answer to the question propounded by Third Circuit on remand is so clearly answered by *Salmoran*, the Court need not address the dispute regarding whether New York has *actually* prosecuted individuals under N.Y. Penal Law § 220.06(1) for possession of chorionic gonadotropin. (*Compare* Doc. 461 at 3-7, 10-11, *with* Doc. 462 at 10-19). The Court notes, however, that the state's prosecution of at least three individuals under N.Y. Penal Law § 220.31—which is substantially similar to § 220.06, except that § 220.31 prohibits the sale, rather than the intent to sell, controlled substances—strongly indicates that there is a realistic probability that New York would prosecute an individual under § 220.06 for possession of chorionic gonadotropin.